1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM B.,

              Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

Case No. 3:23-cv-5684-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

defendant's denial of plaintiff's application for Disability Insurance Benefits (DIB). The

parties have consented to have this matter heard by the undersigned Magistrate Judge.

Dkt. 2. Plaintiff challenges Commissioner's decision finding her not disabled. Dkt. 5,

Complaint.

17

A. Background

18
19
20
21
22
23
24
25

Plaintiff filed his application for DIB on January 4, 2022, alleging an onset date of

August 15, 2021. AR 33, 286–92. For the purposes of his DIB eligibility, the date last

insured is December 31, 2024. AR 33. The ALJ held a hearing on his application on

March 14, 2023 (AR 131–66) and issued a final decision finding plaintiff not disabled on

April 7, 2023 (AR 30–53). The ALJ found plaintiff had the following severe impairments:

regional pain syndrome, shoulder abnormality, depressive disorder, anxiety disorder,

PTSD, bipolar disorder, and substance use disorders. AR 35. The ALJ found plaintiff

1  had the Residual Functional Capacity (RFC):

2      to perform light work, as defined in 20 CFR 404.1567(b), that does not require
       standing or walking more than 4 hours total in a workday; that does not require
3      standing or walking more than 45 minutes at a time; that does not require more
       than occasional balancing, stooping, kneeling, crouching, crawling, or climbing;
4      that does not require more than frequent right overhead reaching; that does not
       require concentrated exposure to vibration or hazards; that consists of simple
5      tasks; that allows a break after 2 hours of work; that consists of a set routine and
       schedule; that does not require more than occasional, superficial interaction with
6      the general public (such as "good morning" or "here is the item"); that does not
       require more than frequent interaction with coworkers or supervisors; that occurs
7      in a moderate or quieter noise environment or that routinely allows the worker to
       wear hearing protection that reduces the noise level to moderate; and that does
8      not require independent goal-setting.

9  AR 38. Based on hypotheticals the ALJ posed to the Vocational Expert (VE) at the

10 hearing, the ALJ concluded plaintiff could not perform his past work but could work,

11 instead, as an electronics worker, inspector packer, or hand finisher. AR 46–47.

12                                  B. Analysis

13         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

14 denial of Social Security benefits if the ALJ's findings are based on legal error or not

15 supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

16 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such

17 relevant evidence as a reasonable mind might accept as adequate to support a

18 conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

19 omitted). The Court must consider the administrative record as a whole. *Garrison v.*

20 *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

21 evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

22 The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did

23 not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

24

25                                      2

1    of the Court's review. *Id.*

2        1.   Medical Opinion of ARNP Jennifer Drake

3            Plaintiff argues the ALJ erred in evaluating the opinion of consultative examiner

4    ARNP Drake. Dkt. 9 at 3–7. ARNP Drake performed a consultative examination on

5    plaintiff in June 2022 and completed a report based on that exam. *See* AR 779–86.

6    ARNP Drake opined plaintiff had limitations in his ability to sustain concentration and

7    persist in work-related activities at a reasonable pace and interact with coworkers,

8    superiors, and the public, and adapt to the usual stresses encountered in the workplace.

9    AR 785.

10           An ALJ is not required to "defer or give any specific evidentiary weight, including

11   controlling weight, to" particular medical opinions, including those of treating or

12   examining sources. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ must

13   consider every medical opinion in the record and evaluate each opinion's

14   persuasiveness, considering each opinion's "supportability" and "consistency," and,

15   under some circumstances, other factors. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir.

16   2022); 20 C.F.R. §§ 404.1520c(b)–(c), 416.920c(b)–(c). Supportability concerns how a

17   medical source supports a medical opinion with relevant evidence, while consistency

18   concerns how a medical opinion is consistent with other evidence from medical and

19   nonmedical sources. See id.; 20 C.F.R. §§ 404.1520c(c)(1), (c)(2); 416.920c(c)(1),

20   (c)(2). The ALJ's explanation for discounting an opinion must be supported by

21   substantial evidence. *See Woods*, 32 F.4th at 792.

22           The ALJ found ARNP Drake's opinion unpersuasive. AR 43. The ALJ primarily

23   found the limitations ARNP Drake opined were inconsistent with her own notes and the

24

25                                              3

results of her examination of plaintiff. *See* AR 43–44. This is a valid reason to discount a medical opinion and goes to the supportability factor. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023); 20 C.F.R. § 4041520c(c)(1) (supportability considers how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)").

The ALJ's finding that ARNP Drake's opinion was inconsistent with her examination results was reasonable and supported by substantial evidence. As the ALJ pointed out (AR 43), ARNP Drake's mental status exam and cognitive exam produced normal results. AR 783–84. The ALJ reasonably found that results – indicating plaintiff had good interpersonal confidence, cooperation, effort, and eye contact – were inconsistent with her finding that plaintiff would be completely unable to interact with others. AR 43 (citing AR 783–84). Similarly, the ALJ reasonably found that ARNP Drake's finding that plaintiff "demonstrated good attention and concentration" was inconsistent with her opined limitations in sustaining concentration and persistence. *Id*.

ARNP Drake explained her opinion that plaintiff would have difficulties adapting to the usual stresses in the workplace: "The claimant presented as easily stressed and overwhelmed. He was on the verge of tears at times. 'My family comes first and it seems like civilian businesses don't understand the concept.'" AR 785. Based on this explanation, the ALJ noted that this opined limitation was "due to [plaintiff's] family situation [and] not his underlying impairments." AR 44.

This reflected a reasonable interpretation of ARNP Drake's explanation— plaintiff's presentation as being on the "verge of tears" appeared to be due to the content of the discussion, rather than ARNP Drake's assessment of the effects of his

limitations, and her observation that plaintiff was on the "verge of tears" appeared to be the basis for her opinion that plaintiff would have difficulties handling stress. *See* AR 785. This interpretation is further supported by the lack of abnormal findings elsewhere in the evaluation relevant to plaintiff's stress tolerance. *See* AR 783–84. The Court is required to defer to the ALJ's reasonable interpretation of the evidence, as long as substantial evidence supports the ALJ's decision and there is no legal error. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for . . . resolving ambiguities.") (citation omitted). Because symptoms not arising from impairments are non-factors in the RFC, this was a valid reason to not include this opined limitation in the RFC. *See* 20 C.F.R. § 416.945 ("[W]e will consider the limiting effects of all your impairment(s) . . . in determining your [RFC]."); *see also Woods*, 32 F.4th at 793 (treatment notes were not relevant because they pertained to only "situational stressors").

The ALJ reasonably found ARNP Drake's opined limitations were unsupported by the objective medical evidence and her supporting explanations. This is a sufficient basis on which to uphold the ALJ's determination and renders any error with respect to the ALJ's remaining reasons for discounting the opinion harmless. *See Woods*, 32 F.4th at 792–93 (finding proper consideration of one of the supportability-and-consistency factors to be an adequate basis to affirm an ALJ's decision); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless where it is inconsequential to the determination and the decision remains valid and supported by substantial evidence).

Plaintiff argues the ALJ's finding that ARNP Drake's opinion was "unsupported and inconsistent" with some of the medical evidence required the ALJ to recontact

ARNP Drake. Dkt. 9 at 4. If a report from a consultative evaluation ordered by the Commissioner is "inadequate or incomplete," the Commissioner must contact the source for further explanation. *See* 20 C.F.R. § 404.1519p(b). However, a finding that an opinion is not supported or consistent with other evidence does not mean that the evaluation was "inadequate or incomplete." The ALJ did not find that ARNP Drake's opinion had missing information or was inadequate on which to make an assessment (*see* AR 43–44), nor does plaintiff present any argument suggesting this was so (*see* Dkt. 9 at 4). The ALJ did not err in failing to recontact ARNP Drake.

2.  Plaintiff's Statements Regarding Symptoms and Limitations

Plaintiff argues the ALJ erred in assessing his testimony. Dkt. 9 at 7–12. Plaintiff testified that he was unable to be in public spaces due to his anxiety, which caused him to feel "closed in," uneasy, and impatient. AR 142–43. He testified that physical activity triggers pain in both his right shoulder and in his left foot, and that he has difficulties standing and walking for prolonged periods of time. AR 143–45.

The ALJ found that plaintiff presented evidence of underlying impairments which could be expected to produce the alleged symptoms. AR 39. In such a circumstance, "the ALJ can reject [plaintiff's] testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons," unless there is evidence of malingering. *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). In so doing, "[t]he ALJ must state specifically which symptom testimony is not credible and which facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

a.  Mental Health Symptoms

1    The ALJ discounted plaintiff's testimony about his mental health symptoms

2  because it was inconsistent with the medical evidence of record. AR 41. In particular,

3  the ALJ said that "the degree of limitation has been in the moderate range, with anxious

4  mood and affect, but otherwise normal signs of functional abilities." AR 41 (citing AR

5  795–99, 856–60).

6    "Contradiction with the medical record is a sufficient basis for rejecting the

7  claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

8  1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th

9  Cir.1995)). An ALJ's explanation that "most of [the claimant's] physicians opined that his

10 mental impairments were 'mild' or 'moderate'" would be a "specific, clear and

11 convincing" reason for discounting a claimant's testimony, "as it enumerated the

12 objective evidence that undermined [the claimant's] testimony." *See Kitchen*, 82 F.4th at

13 739 (cleaned up).

14    In reply, plaintiff points out that two treatment notes stated he had "severe PTSD

15 symptomology." Dkt. 9 at 11 (citing AR 796, 859); Dkt. 15 at 6 (same). But neither note

16 suggests any more than mild or moderate limitations in his functioning. *See* AR 859

17 (severe PTSD symptomology but "moderately impaired" functional status); 796 (severe

18 PTSD symptomology but "variably impaired" functional status). The ALJ did not err in

19 finding that plaintiff's mental health symptom testimony was inconsistent with the

20 medical evidence.

21    b.  Physical Symptoms

22      i.    Medical Evidence

23

24

25                                7

1    The ALJ discounted plaintiff's testimony, in part, because the medical evidence

2  showed that his shoulder pain was controlled after his September 2021 right shoulder

3  surgery. *See* AR 40–41. Evidence of effective treatment can be a clear and convincing

4  reason for discounting plaintiff's subjective testimony. *See Kitchen v. Kijakazi*, 82 F.4th

5  732, 739 (9th Cir. 2023). The medical record reflects that plaintiff's pain was controlled

6  post-surgery – sometimes with medication – and that he had no bearing or lifting

7  restrictions after surgery. *See* AR 560 ("The patient reports that pain is controlled

8  without medications. The patient has no weight bearing/lifting restrictions."); 566 ("The

9  patient reports that pain is controlled with medications."). Yet, this finding only pertained

10  to plaintiff's testimony about *shoulder-related limitations*, and not his testimony about

11  *other* physical limitations.

12    The ALJ discounted plaintiff's testimony about his pain from physical activity

13  because, according to the ALJ, x-ray imaging of plaintiff was "inconsistent with the

14  degree of limitation asserted." AR 41. As the ALJ said, x-ray imagining of plaintiff's

15  chest, shoulder, spine, hip, and knees revealed few abnormal findings. *See id.* (citations

16  omitted). However, plaintiff's physical limitations were alleged to stem from pain caused

17  by his complex regional pain syndrome (CRPS). *See* AR 1243–45.

18    CRPS primarily involves "dysfunction of the sympathetic nervous system" caused

19  by trauma to a single extremity. *See* SSR 03-2p. "It is characteristic of this syndrome

20  that the degree of pain reported is out of proportion to the severity of the injury

21  sustained by the individual." *Id*. Although some of the symptoms of pain resulting from

22  CRPS may be associated with bone abnormalities, they may also be associated with

23  abnormalities in an individual's skin, subcutaneous tissue, or other areas of the body.

24

25

1    *See id.* For this reason, normal x-ray results are not necessarily inconsistent with

2    plaintiff's alleged symptoms stemming from CRPS. *See also Hunt v. Astrue*, 2009 WL

3    1519543 at *5 (C.D. Cal. May 29, 2009) ("RSD/CRPS is a disease diagnosed primarily

4    based on subjective complaints, and the absence of 'objective medical evidence,' such

5    as x-rays or laboratory tests, cannot be cited as a legitimate basis for rejecting plaintiff's

6    subjective pain and limitations testimony.").

7         Defendant acknowledges that "scans may not [be] sufficient objective evidence

8    to evaluate plaintiff's claims related to his [CRPS]," but, relying on SSR 03-2p, argues

9    "the ALJ still had to determine there were objective signs that could corroborate

10   plaintiff's complaints of disabling pain, such as atrophy, swelling, and muscle

11   contractures" in diagnosing the condition and "no such evidence was present here." Dkt.

12   14 at 9.

13        Although defendant accurately describes the Commissioner's diagnostic criteria

14   for CRPS, *see* SSR 03-2p, the ALJ did not rely on lack of objective signs of evidence in

15   concluding that plaintiff's testimony was not credible. *See* AR 39–42. The ALJ did not

16   find that plaintiff's CRPS was not a severe impairment (*see* AR 35) or that it was not an

17   impairment expected to cause some or all of the symptoms plaintiff alleged (*see* AR 39).

18   The Court cannot rely on a rationale not invoked by the ALJ in affirming his

19   determination. *See Brown-Hunter v. Colvin*, 804 F.3d 487, 494 (9th Cir. 2015) ("[T]he

20   credibility determination is exclusively the ALJ's to make, and ours only to review. As we

21   have long held, 'We are constrained to *review* the reasons the *ALJ* asserts.'") (quoting

22   *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)) (emphasis in original).

23           ii.     Limited Treatment

24

25

1    The ALJ also discounted plaintiff's testimony, in part, because treatment for his

2    impairments "was very limited, inconsistent with the degree of limitation and bother he

3    asserted." AR 40–41. "Unexplained or inadequately explained failure to seek treatment"

4    is a valid basis on which an ALJ can find a claimant's testimony undermined. *Tomasetti*

5    *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ pointed out that plaintiff did not

6    seek treatment for his mental or physical symptoms for an eight-month period. AR 40–

7    41.

8    Plaintiff argues the ALJ erred by failing to inquire whether plaintiff had an

9    explanation for his failure to seek treatment. Dkt. 9 at 9–10. Plaintiff relies on SSR 16-

10   3p, which requires an ALJ to "consider[] possible reasons [a claimant] may not comply

11   with treatment or seek treatment consistent with the degree of his or her complaints." *Id.*

12   Defendant argues that plaintiff has presented no explanation for his gap in treatment in

13   the record. Dkt. 14 at 11.

14   The Court agrees with plaintiff. SSR 16-3p requires the ALJ to inquire about

15   whether an explanation exists for a lack of treatment before discounting a claimant's

16   testimony on that basis: an ALJ "may need to contact the individual regarding the lack of

17   treatment or, at an administrative proceeding, ask why he or she has not complied with

18   or sought treatment in a manner consistent with his or her complaints." *See also Robert*

19   *U. v. Kijakazi*, 2022 WL 326166 at *4 (D. Or. Feb. 3, 2022) ("SSR 16-3p suggests that

20   there is at least some obligation on the part of the ALJ to ask the claimant why he or

21   she did not seek further treatment before discounting the plaintiff's testimony on that

22   basis."); *Eitner v. Saul*, 835 Fed. App'x 932, 933 (9th Cir. 2021) (unpublished opinion)

23   (finding ALJ failed to consider possible reasons a claimant failed to seek treatment

24

25

where "the ALJ asked Claimant whether he had received any specific treatment for the condition, but the inquiry ended there").

Failing to inquire about potential explanations for failing to seek treatment also violates an ALJ's duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quotation omitted). SSR 16-3p requires an ALJ to consider "possible reasons" for failing to seek treatment before discounting a claimant's testimony on that basis. If the ALJ concluded there were no "possible reasons" present in the record, then this would be a finding that the record was inadequate for the ALJ to properly consider the evidence, requiring further development. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("[T]he ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence[] triggers the ALJ's duty to conduct an appropriate inquiry.") (citation and quotation omitted). Thus, the ALJ improperly discounted plaintiff's testimony due to his gap in treatment without inquiring about possible explanations for that gap.

iii.     Work History and Activities of Daily Living

The ALJ discounted plaintiff's mental health testimony due to his work history. AR 41–42. The Court need not decide whether the ALJ properly found that his work history was inconsistent with his mental health symptom testimony, as it has already found the ALJ gave valid reasons for discounting that testimony.

To the extent the ALJ found this work history was inconsistent with plaintiff's testimony about his physical symptoms, this was error. As the ALJ acknowledged, plaintiff was provided physical accommodations at his previous position and left, in part,

1    because of the physical requirements of the position. AR 41. "It does not follow from the

2    fact that a claimant tried to work for a short period of time and, because of his

3    impairments, failed, that he did not then experience pain and limitations severe enough

4    to preclude him from maintaining substantial gainful employment." *Lingenfelter v.*

5    *Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).

6            Defendant also states that the ALJ discounted plaintiff's testimony based on his

7    activities of daily living, Dkt. 14 at 11–12, but the ALJ did not mention plaintiff's activities

8    in discussing his testimony, *see* AR 39–42, and the Court cannot affirm the ALJ's

9    determinations with respect to subjective testimony based a rationale on which he did

10   not rely. *See Brown-Hunter*, 804 F.3d at 494.

11                  c.   Harmless Error

12           In sum, the ALJ provided clear and convincing reasons for discounting plaintiff's

13   subjective symptom testimony with respect to his mental health symptoms and

14   symptoms related to his *shoulder* pain. The ALJ failed to provide valid reasons for

15   rejecting the remainder of plaintiff's testimony—including his testimony that he had

16   difficulties sitting and standing for prolonged periods. This error is not harmless, as the

17   RFC finding does not include relevant work-related limitations that would be based on

18   the portions of plaintiff's testimony relating to physical pain in other areas of his body

19   besides his shoulder. *See Carmickle*, 533 F.3d 1155, 1160 (9th Cir. 2008).

20       3.  Lay Witness Evidence

21           Plaintiff argues the ALJ erred in assessing the lay witness statement of his wife.

22   Dkt. 9 at 13–14. Plaintiff's wife submitted a third-party function report in September

23   2021. AR 918–23. She indicated plaintiff had difficulties lifting, standing, sitting,

24

25
                                               12

1    completing chores, and handling stress. *See id.* The ALJ said, with respect to plaintiff's

2    wife's statement, that it was "inconsistent with the medical record and with the

3    claimant's work activities." AR 46.

4        Prior to the implementation of the revised regulations governing the evaluation of

5    medical opinions, the Ninth Circuit held that, "[i]f the ALJ wishes to discount the

6    testimony of the lay witnesses, he must give reasons that are germane to each

7    witness." *Dodrill v. Shalala*, 12 F.3d 915, 920 (9th Cir. 1993). Defendant argues that,

8    under the revised regulations, "the ALJ was not required to articulate how he considered

9    evidence 'nonmedical sources,'" like plaintiff's wife. Dkt. 14 at 13.[1]

10       In *Dodrill v. Shalala*, the Ninth Circuit explained the basis of the germane reasons

11   standard:

12       [W]e have held that friends and family members in a position to observe a
         claimant's symptoms and daily activities are competent to testify as to
13       her condition. *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987). 'Disregard
         of this evidence violates the Secretary's regulation that he will consider
14       observations by non-medical sources as to how an impairment affects a
         claimant's ability to work. 20 C.F.R. § 404.1513(e)(2).' *Id.*

15
16   12 F.3d at 919–20. The revised regulations did not change the requirement that the

17   Commissioner consider lay witness statements about a claimant's symptoms, daily

18   activities, and ability to work—rather, the regulations continue to recognize that such

19   statements are competent evidence. *See e.g.*, 20 C.F.R. § 404.1545(a)(3) ("We will also

20

21   [1] In support, defendant cites to *Fryer v. Kijakazi*, an unpublished opinion in which the Ninth Circuit said in
     a footnote that ALJs "are no longer required to articulate [how they considered lay witness evidence] in
22   their decisions." 2022 WL 17958630 at *3 n.1. (9th Cir. Dec. 7, 2022). However, the Ninth Circuit, in a
     subsequent unpublished opinion, said that this was an open question. *Stephens v. Kijakazi*, 2023 WL
23   6937296 at *2 (9th Cir. Oct. 20, 2023) ("We have not yet addressed whether under the new regulations
     an ALJ is still required to provide germane reasons for discounting lay witnesses."). And "a
24   nonprecedential disposition is not appropriately used . . . as the pivotal basis for a legal ruling by a district
     court." *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020).

25
                                          13

1  consider descriptions and observations of your limitations from your impairment(s) . . .

2  by you, your family, neighbors, friends, or other persons."); *id.* § 404.1529(a) ("We will

3  consider . . . any description your . . . nonmedical sources may provide about how your

4  symptoms affect your activities of daily living and your ability to work."); *id.* § 404.1502

5  ("nonmedical source" includes "family members, caregivers, friends, neighbors,

6  employers, and clergy"); SSR 96-8p ("The RFC assessment must be based on all of the

7  relevant evidence in the case record, such as: […] lay evidence[.]").

8          The ALJ failed to provide a germane reason. The ALJ said only that plaintiff's

9  spouse's testimony was inconsistent with objective medical evidence and plaintiff's

10  activities of daily living, referencing his prior discussion on both issues. AR 46. Although

11  these may in some cases be germane reasons for discounting a claimant's testimony,

12  *see Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (finding that inconsistencies

13  with activities is a germane reason for rejecting a statement); *Bayliss v. Barnhart*, 427

14  F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence is [a germane]

15  reason [for rejecting lay witness testimony]."), as discussed, the ALJ's prior assessment

16  of the medical evidence did not adequately account for all the physical limitations

17  identified by plaintiff's wife, including the limitations she indicated plaintiff had with

18  respect to standing and sitting.

19          The ALJ briefly described some of plaintiff's activities of daily living in discussing

20  ARNP Drake's statement (AR 43), but did not explain that these activities were

21  inconsistent with any of the alleged limitations plaintiff's spouse had described. As such,

22  the ALJ must reevaluate this lay witness statement on remand.

23          4.  Step Five

24

25                                              14

1    Plaintiff argues the ALJ erred in his reliance on the VE's testimony about the

2    availability of the positions the ALJ identified at step five. Dkt. 9 at 14–16. Plaintiff

3    argues that, in light of evidence he submitted after his hearing which contained jobs

4    data contrary to the VE's, the ALJ's determination that plaintiff can perform work which

5    exists in significant numbers in the national economy at step five is not supported by

6    substantial evidence.

7        The Court declines to decide this issue, because of the need for a remand and

8    additional factual development regarding whether plaintiff had the ability to stand or

9    walk for a prolonged time. The Court reverses and remands this case for additional

10   proceedings; on remand, the ALJ's assessment of step five may be different after

11   reviewing plaintiff's statements in light of the relevant medical evidence, and lay witness

12   evidence.

13       5. Remand for an Award of Benefits

14       Plaintiff asks the Court to remand the case with directions to award benefits. Dkt.

15   9 at 15–18. "'The decision whether to remand a case for additional evidence, or simply

16   to award benefits . . . is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d

17   664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

18   1987)). The Court "generally remand[s] for an award of benefits only in 'rare

19   circumstances.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir.

20   2014) (quoting *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004)).

21       A remand for award of benefits is proper only if

22       (1) the record has been fully developed and further administrative proceedings
         would serve no useful purpose; (2) the ALJ has failed to provide
23       legally sufficient reasons for rejecting evidence, whether claimant testimony or

24

25                                    15

medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo*, 871 F.3d at 682–83 (quoting *Garrison*, 759 F.3d at 1020). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (as amended). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded for further proceedings." *Trevizo*, 871 F.3d at 682 (cleaned up).

Here, the Court cannot conclude that further proceedings would serve no useful purpose or that the improperly discredited evidence would direct a finding that plaintiff is disabled. For instance, there record remains uncertain as to whether there are valid reasons for plaintiff's failure to seek further treatment, and additional proceedings can remedy this defect.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further proceedings. The Commissioner shall conduct a de novo hearing and allow plaintiff to present additional evidence. On remand, the Commissioner is directed to address the errors identified in this order regarding the ALJ's evaluation of plaintiff's statements about symptoms and limitations in light of the medical record, and the ALJ's evaluation of plaintiff's wife's statement.

Dated this 7th day of May, 2024.

Theresa L. Fricke
United States Magistrate Judge